**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

**DONALD MACK BENNETT,**

          **Plaintiff,**

    **- against -**

**EDITH ONUA, EDWIN ODURO, and
JUNE YAZZO LIASON,**

         **Defendants.**

-------------------------------------------------- X

**OPINION AND ORDER**

**09 Civ. 7227 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/26/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Donald Mack Bennett, presently incarcerated and proceeding pro se,

brings this action against Edith Onua, Edwin Oduro, and June Yazzo Liason[1]

pursuant to section 1983 of Title 42 of the United States Code.  Bennett seeks

monetary damages in the amount of $5,000,000 for alleged emotional distress,

negligence, deliberate indifference, and medical malpractice.  Defendants now

move to dismiss pursuant to Federal Rule of Civil Procedure 12(c) for failure to

exhaust administrative remedies under 42 U.S.C. § 1197e(a) and failure to state a

---

[1]     Hereinafter, "Defendants."

1

claim under 42 U.S.C. § 1983.  For the reasons stated below, the motion to dismiss is granted.

## II.    BACKGROUND[2]

Bennett was incarcerated at the Westchester County Jail ("WCJ") from February 20, 2009, through February 27, 2009.[3]  On February 20, 2009, Bennett was examined by Edwin Odoro, a physician's assistant ("P.A.").[4]  At the time of the examination, Bennett had in his possession a hospital discharge paper with all his prescribed medications.[5]  During the week of February 20, 2009 until Bennett's court date (on February 27, 2009), he allegedly submitted five "sick-call slips" but was not contacted until Edith Onua, also a P.A., called to tell him she could not prescribe his "life sustaining medication."[6]

On February 27, 2009, Bennett was taken to court without being

---

[2]      The facts recited here are drawn from the Complaint ("Compl."), attached as Ex. A to the Declaration of Fay Angela Jones ("Fay Decl."), Senior Assistant County Attorney.

[3]      *See* Compl. Section II-D.

[4]      *See id.*

[5]      *See id.*

[6]      *Id.*

2

given his medication.[7]  Bennett subsequently became ill and was taken to Sound

Shore Medical Center, where he was treated and released.[8]  Bennett claims

defendant June Yazzo Liason, also a P.A.,  purposely informed the WCJ staff that

nothing was wrong with him because she is racially biased against him.[9]  Bennett

further claims that Yazzo denies any grievance he files on the same racially-

motivated grounds.[10]

## III.    APPLICABLE LAW

### A.    Rule 12(c)

Under Rule 12(c), after the pleadings close but before the trial begins,

a party may move for judgment on the pleadings provided that the motion is made

early enough so as not to delay the trial.[11]  Judgment on the pleadings should be

granted if it is clear that the moving party is entitled to judgment as a matter of

---

[7]      *See id.*

[8]      *See id.*  Bennett alleges he had a "massive heart attack, grand mal
seizure, and almost had a stroke" and that he "ran blood pressure 196 over 145,
heart rate running over 230 beats."  *Id.*  Defendants include WCJ documentation
of Bennett's lengthy medical problems.  *See* Ex. C to Fay Decl.

[9]      *See* Compl. Section II-D.

[10]     *See id.*

[11]     *See* Fed. R. Civ. P. 12(c).

3

law.[12]  In evaluating a motion for judgment on the pleadings, the court applies the

same standard as that applicable to Rule 12(b)(6) motions to dismiss for failure to

state a claim.[13]  As in the context of a motion to dismiss, the court "must accept as

true all of the factual allegations contained in the complaint"[14] and "draw all

reasonable inferences in the plaintiff's favor."[15]  Even so, the court need not

accord "[l]egal conclusions, deductions or opinions couched as factual allegations

. . . a presumption of truthfulness."[16]  In deciding a motion for judgment on the

pleadings, a court may consider

> the pleadings and exhibits attached thereto, statements or
> documents incorporated by reference in the pleadings,
> matters subject to judicial notice, and documents submitted
> by the moving party, so long as such documents either are
> in the possession of the party opposing the motion or were

---

[12]    *See Burns Int'l. Sec. Servs. v. International Union*, 47 F.3d 14, 16 (2d
Cir. 1995).

[13]    *See Patel v. Contemporary Classics*, 259 F.3d 123, 126 (2d Cir.
2001).

[14]    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord
Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[15]    *Ofori-Tenkorang v. American Int'l. Group, Inc.*, 460 F.3d 296, 298
(2d Cir. 2006).

[16]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)
(quotation omitted).

4

relied upon by that party in its pleadings.[17]

## B.    Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all administrative remedies before bringing an action regarding prison conditions.[18] The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[19]  "[A]s long as other forms of relief are obtainable through  administrative channels, the provision is applicable even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings."[20]

Failure to exhaust is an absolute bar to an inmate's action in federal

---

[17]     *Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

[18]     *See* 42 U.S.C. § 1997e(a) (providing that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."). *See also Porter v. Nussle*, 534 U.S. 516, 516 (2002).

[19]     *Porter*, 534 U.S. at 532.

[20]     *Booth v. Churner*, 532 U.S. 731, 741 (2001) (requiring an inmate to complete the prison administrative process before suing over prison conditions even where the inmate sought only money damages, which could not be recovered through the administrative process).

5

court as "[section] 1997e(a) *requires* exhaustion of available administrative

remedies *before* inmate-plaintiffs may bring their federal claims to court at all."[21]

Failure to exhaust is an affirmative defense, however.[22] As such, plaintiff need not

plead exhaustion in the complaint.[23]

While the Second Circuit has recognized that the PLRA's exhaustion

requirement is mandatory, it has also recognized three exceptions to the

exhaustion requirement:

> when (1) administrative remedies are not available[24] to the
> prisoner; (2) defendants have either waived the defense of
> failure to exhaust or acted in such a way as to estop them
> from raising the defense; or (3) special circumstances, such
> as reasonable misunderstanding of the grievance
> procedure, justify the prisoner's failure to comply with the

---

[21]    *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *rev'd. on other grounds* (quotation marks and citation omitted) (emphasis in original).

[22]    *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

[23]    *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

[24]    To be available, an administrative remedy must "afford the possibility of some relief for the action complained of." *Booth*, 532 U.S. at 738. In some circumstances, the behavior of the defendant may render administrative remedies unavailable. *See, e.g., Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (remanding case to the district court to determine whether some seemingly-available remedies were rendered unavailable by threats made by correction officers).

exhaustion requirement.[25]

When any of the above are present, the affirmative defense of non-exhaustion fails.[26] Where (1) administrative remedies were available to the plaintiff, (2) defendants are not estopped and have not forfeited their non-exhaustion defense, and yet (3) plaintiff did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged to justify "the prisoner's failure to comply with administrative procedural requirements."[27]

The Second Circuit has held that "'[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought' . . . does not constitute proper exhaustion."[28]  "[N]otice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he . . . system will not have such an opportunity unless the grievance complies with the system's critical  procedural

---

[25]     *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

[26]     *See Hemphill*, 380 F.3d at 686.

[27]     *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004).

[28]     *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005)) (noting that *Braham* cannot survive *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006), which states that plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to [prison] staff.").

7

rules.'"[29]

## C.   Westchester County Department of Corrections Inmate Grievance Program

The Westchester County Department of Corrections ("WCDOC"),

Jail Division, has an established Inmate Grievance Program ("IGP") approved by

the New York State Commission on Correction ("NYSCOC").[30]  A "grievance" is

defined as "any inmate/detainee complaint relating to any facility policies,

procedures, rules, practices, programs or the action or inaction of any person

within the facility."[31]  In 2009, the IGP allowed inmates to make informal

complaints to the Block Officer, who would log such complaint and attempt to

resolve them.[32]  Grievances that could not be resolved in this manner entered a

formal process affording two levels of subsequent appeal.[33]

---

[29]    *Id.* (quoting *Woodford*, 548 U.S. at 95).

[30]    *See* Affidavit of Anthony Amicucci ("Amicucci Aff."), Warden of the Westchester County Department of Correction, ¶ 5; *see also* Ex. 1 to Amicucci Aff. (copy of the WCDOC grievance procedures).

[31]    Amicucci Aff. ¶ 8.

[32]    *See id.* ¶ 9.

[33]    *See id.* ¶¶ 11-13.  *See also* Westchester County Department of Correction Policy and Procedure, Ex. 1 to Amicucci Aff. at 4 (attached as Ex. E to Fay Decl.) (chart showing time schedule for grievance filing and appeal).

8

## IV.   DISCUSSION

### A.   Defendants Have Adequately Demonstrated Bennett's Failure to Exhaust Administrative Remedies

Despite Bennett's claim that he filed a grievance at WCJ that was denied,[34] a search of the grievance log records maintained by WCDOC between February 20 and February 27, 2009 did not reveal any record of a grievance by Bennett concerning his medical care.[35]  Bennett claims he informed Warden Amicucci of his grievance.[36]  Warden Amicucci states in his sworn affidavit that Bennett never contacted him about any claims.[37]  Regardless, notice to a prison official is insufficient.[38]  As such, Defendants have adequately supported the affirmative defense of failure to exhaust.

----

[34]    *See* Compl. Section IV-F.

[35]    *See* Amicucci Aff. ¶ 17.  Although Bennett completed Complaint Section IV-F, which asks the inmate to describe the grievance claim if one had been made, he also completed Section IV-G, which states, "If you did *not* file a grievance, did you inform any officials of your claim(s)?"  Also, in describing "all efforts to appeal [the instant claim] to the highest level of the grievance process," Bennett simply writes that he has "always appeal [sic] and never sign agreeing." Compl. Section IV-F(3).  Bennett cannot have appealed if he never filed an initial grievance.

[36]    *See* Compl. Section IV-G

[37]    *See* Amicucci Aff. ¶ 18.

[38]    *See Macias*, 495 F.3d at 44.

**B.      Bennett Has Not Sufficiently Alleged Facts Supporting an Exemption From the Exhaustion Requirement**

In light of Defendants' affirmative defense of non-exhaustion, the instant motion now presents three issues: (1) whether administrative remedies were available to Bennett, (2) whether Defendants are estopped from asserting exhaustion as a defense, and (3) whether special circumstances excuse Bennett's failure to exhaust administrative remedies.   Bennett has not alleged any facts to support an exemption from the exhaustion requirement.

*First*, Bennett does not allege that all available administrative remedies were procedurally unavailable at WCJ.  When first processed into WCJ, inmates receive a packet called "The Inmate Rules and Regulations."[39]  The Inmate Rules and Regulations advise inmates that grievance forms are available from the correction staff and from the Law Library.[40]  Bennett does not allege that these forms were not available to him or that they did not "afford the possibility of some relief for the action complained of."[41]

---

[39]     *See* Amicucci Aff. ¶ 6; *see also* Ex. 2 to Amicucci Aff. (copy of the Inmate Rules and Regulations packet).

[40]     *See* Amicucci Aff. ¶ 6.

[41]     *Booth*, 532 U.S. at 738.  Bennett was allegedly familiar with the WCJ grievance process, having filed an unrelated grievance about two years prior to commencing this action.  *See* Amicucci Aff ¶ 19; *see also* Ex. 3 to Amicucci Aff.

*Second*, Bennett does not allege that all available administrative remedies were rendered unavailable by any action of any defendant. *Third*, Bennett does not allege that any defendant ever acted in any way that would estop Defendants from asserting non-exhaustion as a defense, or that any special circumstances exist to justify Bennett's failure to exhaust all possible remedies.

## V.    CONCLUSION

Because Defendants have adequately supported the affirmative defense of failure to exhaust and because Bennett has not presented any facts on which this Court could base an exception, his Complaint is dismissed without prejudice. Bennett may file a new action once he has exhausted all remedies, as required by PLRA section 1997e(a). Accordingly, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [Docket No. 17] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 26, 2010

(photocopy of WCJ's log of Bennett's unrelated May 2007 grievance).

## - Appearances -

**Plaintiff (pro se):**

Donald Mack Bennett
ID #5233
Westchester County Jail
P.O. Box 10
10 Woods Road
Valhalla, New York 10595

**For Defendants:**

Robert F. Meehan, Westchester County Attorney
Fay Angela Jones, Senior Assistant Westchester County Attorney
600 Michaelian Office Building
148 Martine Avenue
White Plains, New York 10601
(914) 995-2672